(Nos. 28288, 28289.—

THE PEOPLE *ex rel.* Victor L. Schlaeger, County Collector, Appellee, *vs.* REILLY TAR & CHEMICAL CORPORATION, Appellant.

*Opinion filed January 17, 1945—Rehearing denied March 19, 1945.*

Scott, MacLeish & Falk, (Robert S. Cushman, and John J. O'Brien, Jr., of counsel,) all of Chicago, for appellant.

Thomas J. Courtney, State's Attorney, Barnet Hodes, Corporation Counsel, William J. Tuohy, State's Attorney on rehearing, Jacob Shamberg, Richard S. Folsom, and Kirkland, Fleming, Green, Martin & Ellis, (Joseph B. Fleming, Joseph H. Pleck, Edward C. Caldwell, Joseph E. Grossman, Otho S. Fasig, Emmett Harrington, and J. Herzl Segal, of counsel,) all of Chicago, for appellee.

Mr. Justice Wilson delivered the opinion of the court:

The defendant, Reilly Tar & Chemical Corporation, having previously paid its taxes in full, under protest, filed objections in the county court of Cook county to an application of the county collector for judgments against and orders for the sale of real estate for the nonpayment of certain taxes for the years 1941 and 1942 levied by the city of Chicago and the board of education of the city. From the judgments overruling these objections for the years 1941 and 1942, respectively, the taxpayer has prosecuted separate appeals. The appeals have been consolidated for consideration and opinion, the issues involved being identical. Objections to the taxes for 1941, only, will be considered. Disposition of them, it is agreed, will be decisive with respect to like objections for the year 1942.

Defendant interposed objections to eighteen items included in the appropriation ordinance of the city of Chicago and the tax levy ordinance, aggregating $135,200. The items range from $1000 to $25,000. Only five exceed $7000. Illustrative items are:

3-S-25   Committee on Buildings and Zoning
         For expenses of the Sub-committee on Rezoning of the city.........................$ 2,000.00
3-S-85   Committee on License
         Operating expense of committee............ 4,600.00
8-S-5    Chicago Recreation Commission
         Operating expense of commission........... 25,000.00
8-S-35   Committee on Standards & Tests
         Operating expense of committee............ 1,000.00

Defendant charged that the items quoted and the other fourteen are not itemized as required by law and are, consequently, void. Applicable principles have been frequently stated. The right of a taxpayer to have stated separately what are the purposes for which public money is appropriated is firmly established, and a levy not sufficiently definie to apprise him of the purpose for which the money is to be expended is invalid. (*People ex rel. Schaefer* v. *New York, Chicago and St. Louis Railroad Co.* 353 Ill. 518.) His right to have separately stated the purpose for which public money is appropriated or a tax levied is a substantial right of which he may not be deprived. (*People ex rel. Toman* v. *Signode Steel Strapping Co.* 380 Ill. 633.) On the other hand, it is equally settled that specification of each particular item of expense for which a levy is made is not required. A single appropriate general purpose is sufficient to include every expenditure although there be many items. (*People ex rel. Lindheimer* v. *Hamilton*, 373 Ill. 124.) This is especially true where it is difficult to determine, in advance, the exact amount of the various items. In short, itemization requirements must be accorded a common-sense construction. *People ex rel. Toman* v. *Estate of Otis*, 376 Ill. 112.

Each of the challenged appropriations bears an "S" designation. This letter, according to an exhibit consisting of "Classification of Accounts and Commodity Code" explaining the classification of expenditures, refers to "Temporarily Unclassified Items." A detailed explanation follows: "Expenditures for specific purposes which are required to be further itemized as expended according to standard accounts. Appropriation shall be made to this account only when it is impracticable to estimate in advance the classification under standard accounts and the items shall be classified under the proper standard accounts as expended." The appropriations are for committees of the city council. No part can be for salaries or other compensation of the members of the committees, for the reason that the members are aldermen who receive the maximum salary permitted by statute. Operating expenses necessarily include salaries for clerical assistance, travel, and the purchase of supplies and printing. Typewriters, desks, chairs, or other items of equipment would constitute capital expenditures, and not "operating expense," as defendant asserts. It further appears that where an appropriation for a committee is substantial, in comparison with the total amount of appropriations, it has been itemized in considerable detail. It does not follow that, because appropriations of $94,274 for the Committee on Finance, $135,000 for the Chicago Plan Commission, and $41,000 for the Public Vehicle License Commission permit of itemization, an appropriation of $1000 for the Committee on Standards & Tests also lends itself to itemization. The "operating expense" of the seventeen committees and Chicago Recreation Commission states but a single general purpose, and adequate light is given the taxpayer of the purpose for which the money is to be expended. The objections to the committee appropriations and levies were properly overruled.

Next, defendant objected to the following item in the appropriation and levy ordinances:

"63-K-30  For hire of teams, carts and motor trucks
as needed at the rates specified:
Motor trucks, tractors, trailers and other
equipment at established rates
Team hire at not to exceed $11.75 per day
Carts at not to exceed $8.00 per day
· Single horses and drivers on weed cutters
at $8.00 per day...................... $2,420,000"

The gist of the objection is that the quoted item is indefinite, vague, and not properly itemized. An appropriation of the city of Chicago for the year 1937, similar to the appropriation quoted, was involved in *People ex rel. Toman* v. *Sage,* 375 Ill. 411. The item commenced: "For hire of teams, carts and motor trucks as needed at the rates specified and for the purchase of waste collection equipment when approved by the city council: Motor trucks at established rates." This court decided that "purchase" and "hire" were separate purposes, one representing a capital investment and the other a current expense, and that the amount for each should have been separately stated. The 1941 appropriation ordinance, conformably to our decision in the *Sage case,* omitted the words, "and for the purchase of waste collection equipment when approved by the city council." Between the words "Motor trucks" and "at established rates" were inserted the words "tractors, trailers and other equipment." Defendant concedes that the appropriation now assailed satisfies the objection involved in the *Sage case.* It complains, nevertheless, that it is uncertain, vague, indefinite and unintelligible.

In *People ex rel. Gibbons* v. *Clark,* 296 Ill. 46, the appropriation and tax levy ordinances of the city of Chicago contained the following: "For cleaning of streets, collection and removal of garbage, ashes and miscellaneous

refuse, and for the repair of unimproved streets, sidewalks and miscellaneous street work, and for the maintenance and operation of buildings and equipment in connection therewith, $3,510,000." This court observed that if the appropriation had been made "for cleaning streets and alleys" it would have specified a distinct object and purpose and would have been a legal appropriation, adding: "Because the city council went farther and grouped under the general heading many details embraced within the general purpose furnishes no valid ground for holding the tax levy void." The appropriation considered in the *Clark case* included as one of the details of the single general purpose of cleaning streets, "maintenance and operation of buildings and equipment in connection therewith." In the present case, the appropriation is considerably narrower in its scope than the appropriation approved in the *Clark case*. Here, the item appears in the list of appropriations for the Bureau of Streets and is found among several items under the subdivision "Street and Alley Cleaning Division." It should be considered in its proper perspective with the entire appropriation for the Bureau of Streets, and, when so considered, it states a single purpose, namely, the removal of waste material from the streets and alleys of Chicago. Incident to the execution of this general purpose, it is necessary to hire teams, carts, motor trucks, tractors, trailers, and like equipment. Defendant's argument that the words "other equipment" cast doubt upon the object of the appropriation is without merit. These words follow the specific enumeration "motor trucks, tractors and trailers." The familiar principle of *ejusdem generis* is applicable. (*Spalding* v. *People,* 172 Ill. 40.) Defendant asserts that it cannot ascertain from the appropriation what portion of the money will be expended for trucks, tractors, trailers, and other equipment, respectively. It does not stand in an isolated position in this regard. Obviously, the city itself could not, at the time of the passage of the ordi-

nance, know how many trucks, trailers, and tractors would be required. Upon the authority of *People* v. *Sage,* 375 Ill. 411, and *People* v. *Clark,* 296 Ill. 46, the second objection was properly overruled.

The 1941 appropriation ordinance of the board of education contained appropriations for the building fund upon which the tax levy ordinance is based. Defendant objected to fifteen items, alleging that they were illegally charged against the building fund; that the board levied $52,000,000 for educational purposes for the year 1941, the maximum amount allowed by the applicable statute, (Ill. Rev. Stat. 1941, chap. 122, par. 212a,) and that, if the items assailed are educational and not building fund charges, they were not only charged to the wrong fund but also constitute a levy for educational fund purposes in excess of the maximum legal amount. The items assailed appear in the ordinance, as follows:

| | | |
|---|---|---:|
| 3-R-641 | Shipments and Removals | $20,000 |
| 3-R-641 | Refinishing Seats and Desks | 65,000 |
| 3-R-641 | Replace Stolen Equipment | 1,000 |
| 3-R-676 | Workman's Compensation | 15,000 |
| 3-R-676 | Unused School Property | 3,000 |
| 3-R-634 | Auto Replacements | 1,500 |
| 3-R-634 | Auto Repairs | 3,500 |
| 3-R-625 | Window Shade Repairs | 25,000 |
| 3-R-641 | Moving Mechanical Equipment | 5,000 |
| 3-S-741 | Inventory Equipment (New Seats and Desks) | 65,000 |
| 3-S-741 | New Cots | 1,000 |
| 3-S-741 | Lunch Room Equipment | 327,000 |
| 3-S-741 | New Curtains | 1,000 |
| 3-S-741 | Physical Education Equipment Rehabilitation | 25,000 |
| 3-S-741 | Other Equipment—Rehabilitation | 25,000 |

Determination of whether these items are legally chargeable to the building fund is, in turn, dependent upon the construction of section 189⅛ of the School Law. (Ill. Rev. Stat. 1943, chap. 122, par. 212a.) So far as relevant, section 189⅛ ordains: "(A) For the purpose of establishing and supporting free schools for not fewer than nine months

in each year and defraying all the expenses of the same of every description; for the purpose of building, repairing and improving school houses, or procuring school land, furniture, fuel, libraries and apparatus and for all other necessary incidental expenses in each * * * city, having a population of five hundred thousand or more inhabitants, * * * the board of education and the authorities of such * * * city, * * * shall be authorized to levy annually, upon all the taxable property of the * * * city, a tax for building purposes and the purchase of school grounds * * *; and to levy annually, * * * for educational purposes a tax * * *; provided, further, that any sum expended or obligations incurred for the improvement, repair or benefit of school buildings and property shall be paid from that portion of the tax levied for building purposes and the purchase of school grounds, but after the year 1930, no part of the salaries or wages of persons employed in connection with the custody, heating or cleaning of school grounds and buildings and equipment therein shall be paid from such tax for building purposes and the purchase of school grounds."

An understanding of section 189⅛ will be aided by a review of earlier legislation on the same subject. Section 43 of the School Law of 1857, as amended in 1859, authorized school districts to levy taxes for the purpose of establishing and supporting free schools, and defraying all the expenses incident thereto, of every description; for the purpose of repairing and improving school houses; of procuring furniture, fuel, libraries and apparatus, and for all other necessary incidental expenses. It was further provided that the directors of school districts might also appropriate for the purchase of libraries and apparatus, any surplus funds, after all necessary school expenses were paid. (Laws of 1859, p. 161.) Section 44 authorized the directors to ascertain the amount of money required for school purposes during the ensuing year and to certify the

requisite rate percentage to the county clerk. The funds so raised were directed to be appropriated by the directors to the various objects and purposes for which they were intended. The statute did not, however, specify any specific proportion to be devoted to any designated purpose. Nor was there any limitation on the rate or the amount to be applied to any specific purpose. In 1872, a complete revision of the School Law was made. (Laws of 1871-72, p. 700.) Section 43 of the new act was substantially the same as section 43 of the earlier statute. The rate of taxation was limited "not to exceed two per cent for educational and three per cent for building purposes," but the rates were not required to be certified separately. Section 44 authorized a certificate for one amount, only, to be levied as a special tax for school purposes on the taxable property of the district. In 1889, another revision of the School Law became effective. (Laws of 1889, p. 256.) Sections 43 and 44 of the act of 1872 now appear as sections 1 and 2 of article 8 of the revised law. The directors were required, for the first time, to certify separately the amounts required for school purposes and building purposes. As amended in 1889, the School Law contained no definition of the terms "educational" and "building" purposes. Numerous decisions involving the construction of the School Law of 1889 stated the intention of the statute was that all of the current ordinary expenses of the schools, including ordinary repairs, were to be covered by the taxes to be levied within the two per cent for educational purposes, and that the additional taxes to be levied within the three per cent for building purposes were intended solely to provide the means to meet the special occasion of the building of a school house. In particular, the words "for building purposes" were construed to be special and applicable only to the building of school houses and matters incident thereto, whereas the words "for educational purposes," on the other hand, were general and applied to all

matters for which a board of directors might levy school taxes. Accordingly, heating, repairing, papering and painting a school house, replacing a steam heating plant with another, changing sewers in connection with a building and constructing walks around it, were not building purposes, but, instead, constituted educational purposes. *People ex rel. Rea* v. *Toledo, St. Louis and Western Railroad Co.* 231 Ill. 514; *Illinois Southern Railway Co.* v. *People ex rel. Ebers,* 215 Ill. 123; *Wabash Railroad Co.* v. *People ex rel. Patterson,* 187 Ill. 289; *O'Day* v. *People ex rel. Kinsey,* 171 Ill. 293; *Chicago and Alton Railroad Co.* v. *People ex rel. Wood,* 163 Ill. 616.

In 1907, the General Assembly amended section 1 of article 8 of the act of 1889 to fix the amount to be levied for educational and building purposes each at two and one-half per cent, and added this proviso: "incidental expenses as herein used shall not include any sum expended or obligation incurred for the improvement, repair or benefit of the school buildings, or property, but all such sums and obligations shall be paid from that portion of the tax levied for building purposes." (Laws of 1907, p. 519.) A general revision of the School Law was made in 1909, sections 1 and 2 of article 8 of the act of 1889 becoming sections 189 and 190 of the act of 1909. These sections made no change in the purpose for which the directors had been authorized to levy taxes since 1859, but a proviso, practically the same as the quoted proviso, was added to section 189. No change pertinent to the issue presented here was made between 1909 and 1921. In the year last named, the word "building" was inserted before "repairing of," and the words "or procuring school land," substituted for the words "of procuring" between the words "school houses" and "furniture," so that the second clause read, "for the purpose of building, repairing and improving school houses, or procuring school land, furniture, fuel, libraries and apparatus," (Laws of 1921, p. 818,) instead

of "for the purpose of repairing and improving school houses, of procuring furniture, fuel, libraries, and apparatus." Laws of 1909, p. 394.

The proviso in the amendment of 1907, and incorporated substantially unchanged in the acts of 1909 and 1921, to the effect that the term "incidental expenses" should not include any sum expended or obligation incurred for the improvement, repair or benefit of school buildings or property, but that all such sums and obligations should be paid out of the portion of the tax levy for building purposes, transferred those items of expense from the educational fund to the building fund. All other expenses authorized in the first part of section 189 for "furniture, fuel, libraries and apparatus, and for all other necessary incidental expenses in each district" remained payable from the tax authorized for educational fund purposes. (*People ex rel. Gleghorn* v. *Chicago and Alton Railroad Co.* 257 Ill. 208; *People ex rel. Quisenberry* v. *Bates,* 266 Ill. 55; *Llewellyn* v. *Board of Education* 324 Ill. 254.) In *People ex rel Risinger* v. *Cummins,* 337 Ill. 281, this court said: "The items of expense for light and fuel and the purchase of desks and equipment do not come under the terms of the proviso [section 189 of the School Law]. The purpose of procuring furniture, fuel, libraries and apparatus is specifically mentioned among the purposes for which a tax may be levied. These are not building purposes unless so declared by the statute, and it is not so declared in the proviso." In *People ex rel. Reeves* v. *Bell,* 309 Ill. 387, this court observed: "The authority to levy a tax for building purposes is intended to provide for the needs of the district for building, repairing and improving the school house and property for the ensuing year and not to provide a fund for possible future needs. The expenses of the district for educational purposes cannot be paid out of a tax levied for building purposes but the tax levied for building purposes must be expended for that purpose, only."

In 1930, and subsequent to the decisions in the *Cummins* and *Bell cases,* section 189⅛ was enacted. This new section relates solely to school districts having a population of 500,000 or more inhabitants, and is identical to section 189, to the extent relevant to the issue presented for our consideration. Section 189 is still in force, and is applicable to school districts having a smaller population. Section 189⅛ defines and describes the purpose for which educational and building fund taxes may be levied in substantially the same verbiage employed in section 189. Where a statute is re-enacted in substantially the same language as a former statute which has been judicially considered, the presumption obtains that the General Assembly re-enacted the statute in view of such construction. (Ill. Rev. Stat. 1943, chap. 131, par. 2; *People ex rel. Carnine* v. *Illinois Central Railroad Co.* 337 Ill. 276.) It necessarily follows that sections 189 and 189⅛ are to be construed in the same manner, after the addition of section 189⅛ in 1930, as section 189 had been construed prior to the amendment. From a review of the legislation on the subject and earlier decisions, it appears that building fund taxes can be levied only (1) for the purpose of building, repairing and improving school houses and for purchasing school lands, and (2) for expenses or obligations incurred for the improvement, repair or benefit of school buildings and property. Educational fund taxes can be levied (1) for the purpose of procuring furniture, fuel, libraries and apparatus and (2) for meeting all necessary incidental expenses of every kind, character and description other than expenses payable from the building fund, as prescribed by statute, (or from certain special funds, namely, the free text-book, playground, or teachers'-pension fund.)

Application of the law to the appropriations attacked here impels the conclusion that they are educational fund items and not legitimate charges against the building fund.

Preceding the four items for "Shipments and Removals," "Refinishing Seats and Desks," "Replace Stolen Equipment" and "Moving Mechanical Equipment" are the letters and figures "3-R-641." According to the "Key to the 1941 Budget Code," the figure 3 represents the fund from or to which each amount appropriated is to be paid or charged and, in particular, denotes that these four items are charged to the building fund. "R," the fund letter, indicates the standard account to which the appropriation is chargeable. Reference to the "Summary Classification of Standard Accounts" discloses that "R" indicates "Repairs and Replacements," under "Buildings." The number "641" represents the function or the character of the expense for which the appropriation is made. In the "Sub-Classification of Standard Accounts" the number "641" relates to "Furniture and Equipment," more particularly described as "Seats, desks, chairs, stools, couches, tables, clocks, manual training, domestic science and gymnasium equipment, cork carpets, rugs, draperies, stage curtains, pictures," etc. It is manifest that the four items relate to repairs and replacements of furniture and equipment under account number "641," which section 189⅜ of the School Law ordains must be charged to the educational fund and, conversely, are not chargeable to the building fund. *People* v. *Cummins*, 337 Ill. 281, specifically declares that the "purchase of desks and equipment" must be charged to the educational fund.

Six items, "Inventory Equipment (New Seats and Desks)," "New Cots," "Lunchroom Equipment," "New Curtains," "Physical Education Equipment Rehabilitation," and "Other. Equipment Rehabilitation," have the designation 3-S-741 preceding them. The letter "S" refers to the "Construction and Betterments" account and the number "741" indicates that the items are for "Capital Outlay," listing the same items appearing with number "641." The

difference is that "641" relates to repairs and replacements and "741" to the purchase of these same items. They are not proper charges against the building fund.

Two items, "Workman's Compensation" and "Unused School Property," bear the designations 3-R-676. The figure "676" indicates that these items were charged to "Miscellaneous Minor Repairs." Neither of these items is for the improvement, repair, or benefit of school buildings and property. A direct, and not a remote or incidental, connection with a proper building purpose is required.

Two other items, "Auto Replacements" and "Auto Repairs," are preceded by the designation "3-R-634." These items are charged to the "Repairs and Replacements" account of the building fund, the number "634" indicating that they are for "Auto Repairs." These appropriations are clearly within expenses incurred either for apparatus or "all other necessary incidental expenses."

The fifteenth and last item, "Window Shade Repairs," bears the designation "3-R-625." Again, the letter "R" refers to the "Repairs and Replacements" account of the building fund and the number "625" to "Furnishings and Fittings, Blackboards, Window Shades, Fire Alarms, House Telephones." This last appropriation also falls within the term "apparatus" or the expression "all other necessary incidental expenses."

Over the objection of defendant, Alfred E. Bolt, auditor for the board of education, testified, according to the board, for the purpose of showing "why" the fifteen items objected to were charged to the building fund. Defendant objected to his testimony upon the ground that parol testimony could not be introduced to explain, alter, vary or enlarge the official record of the board of education required by law to be kept. It is well settled that where public records of proceedings are required to be kept, the records cannot be contradicted, added to, nor supplemented by parol evidence. (*People ex rel. County Collector of Whiteside*

*County* v. *Roth,* 387 Ill. 62; *People ex rel. Toman* v. *Chicago Heights Terminal Transfer Railroad Co.* 375 Ill. 590.) Bolt's testimony did more than explain the precise nature of the items under consideration, for the reason that his testimony tended to vary or modify the budget. His testimony reflects his conclusion with respect to what the board of education intended to do when it approved the budget. This, we have recently decided, cannot be done. (*People ex rel. Franklin* v. *Wabash Railroad Co.* 387 Ill. 450.) The board of education has an official budget code which was introduced in evidence, and to which we have referred. This code is one of its official records, is incorporated by reference into the budget, and is intended to explain and supplement the words used in the appropriations. (*People ex rel. Lindheimer* v. *Hamilton,* 373 Ill. 124; *People ex rel. Gill* v. *White,* 367 Ill. 415.) Not only did Bolt's testimony attempt to explain the language employed in the appropriations but it, in many instances, directly contradicts the budget code of the board for whom he testified. We need not consider, in detail, the numerous conflicts between Bolt's testimony and the pertinent portions of the budget code. Referring to the first challenged item "3-R-641 Shipments and Removals $20,000," Bolt testified that this charge was a building maintenance item and consisted of expense incurred in shipping and removing building and maintenance machinery such as furnaces and accessorial heating apparatus and air-conditioning machinery from and to school buildings and between school buildings owned by the board of education. According to the budget code, the figure "641" indicates that the appropriation relates to "Furniture and Equipment" and, in particular, "Seats, desks, chairs, stools, couches, tables, clocks, manual training, domestic science and gymnasium equipment, cork carpets, rugs, draperies, stage curtains, pictures," etc. We fail to perceive how any of the quoted items has any connection with furnaces, ac-

cessorial heating apparatus or air-conditioning machinery. Moreover, Bolt's testimony is in further conflict with the budget code, as the figure "662" is captioned the "Heating, Ventilation and Heat Regulation" account of the building fund, and the number "666" covers maintenance expenses for "Machinery, Motors, Pumps, Engines, Belting, Pulleys, Furnaces, Stoves," etc., likewise an account of the building fund. Apart from the fact that Bolt's testimony does not support the board, it flatly contradicts the records kept by the board of education and introduced by it in evidence, and was inadmissible. We shall not unduly lengthen this opinion by referring to his so-called explanation of each of the remaining fourteen items. We deem it sufficient to state that a careful examination of his testimony discloses that it fails to support the appropriation and resultant levy in a single instance. Defendant's objection to the fifteen appropriations considered should have been sustained.

Defendant also interposed objections to the taxes of the board of education produced by appropriations for the bureaus of finance, purchases and engineering, and the department of law. Included for the year 1941 are appropriations aggregating $503,361 for the bureau of finance, the bureau of purchases, $98,620, the department of law, $114,132, and the bureau of engineering, $181,391. These appropriations include numerous items, all, according to the key number at the left of each, charged to the educational fund. Portions of the total appropriations for each of the three bureaus named and the department of law are allocated to various funds other than the educational fund by prorata lump sum deductions. The appropriations for the bureau of purchases are illustrative. From the total of $98,620, deductions amounting to $33,500 are made for the prorata share of "above expenses" chargeable to: building fund $23,000, free text book fund $8000, school playground fund $2500. Defendant charges that the amounts of the appropriations allocated to the building

fund, the free text book fund and the school playground fund are, in each instance, illegal because the various items which enter into the totals are educational fund charges which cannot legally be charged to any other fund. Defendant further charges that the amounts of the appropriations allocated to the building, free textbook and school playground funds entered into the computation of the tax levies for the respective funds for the year 1941 and produce an equivalent amount of 1941 taxes for these funds which are void. According to the taxpayer, the board of education has levied its maximum rate for educational purposes and, notwithstanding this fact, attempts to charge to other funds expenses which are, without question, educational purposes, the result being not only that the appropriations are illegally charged to the wrong funds but that the error, if corrected by charging the appropriations to the educational fund, would increase the levy for the educational fund beyond the maximum limit of $52,000,000 permitted by law.

Bolt, the auditor, testified, over defendant's objection, that the challenged deductions from the educational fund consist of amounts necessary to defray the administrative expense (1) incident to the acquisition and maintenance of school buildings and grounds, (2) in acquiring and furnishing free textbooks, and (3) of controlling, managing, and operating playgrounds owned by the board of education. He testified, further, that the budget lists hundreds of employees who devote a part of their time to necessary work for the benefit of buildings and property, incidental to the furnishing of free textbooks and in connection with the control, management, and operation of playgrounds by the board. He added that, in the administration of the duties of the board, many employees in the bureaus of finance, purchases and engineering and the law department perform services for the benefit of more than one fund, and that the deductions in controversy are made so as to

allocate the expense to each fund served by the employees in proportion to the amount of work done for each fund. Bolt pointed out that, in acquiring land and constructing buildings, much legal work is required, namely, the drafting of contracts, the prosecution of condemnation actions, the vacation of alleys, and the examination of titles. Further, the witness stated that the furnishing of free textbooks, the management and operation of playgrounds, and the purchase, repair and maintenance of school buildings and properties necessitate numerous transactions requiring the handling of vast sums of money. Bolt also testified that the salary checks of employees rendering service for the several funds are drawn against the educational fund, adding that it would be impractical and uneconomical to set up separate accounting and clerical staffs for each fund or to draw separate checks on each fund representing the proportion of time of each employee's work allocated to each fund.

As previously stated, the board of education levied the maximum amount permissible for educational fund purposes for the year 1941 and 1942. As defendant points out, if the portions of the appropriations now considered are improperly charged to the building, free textbook and playground funds, they are not only illegally charged to the wrong fund but, also, represent expenditures in excess of the maximum allowed by statute for educational purposes. The scope of proper building fund charges and educational fund charges has been described. In particular, the building fund is special, being limited to the specific purposes defined in the statute, namely, building, repairing and improving school houses, or improving school lands, and expenditures or obligations incurred for the improvement, repair or benefit of school buildings and property. In like fashion, the free textbook fund (Ill. Rev. Stat. 1943, chap. 122, par. 212a,) and the playground fund (Ill. Rev. Stat. 1943, chap. 122, par. 343,) are special and

limited to the purposes set forth in the applicable statutes. Recourse to the appropriations involved in the objections discloses that all items included are general administrative, operating expenses. The appropriations for the bureau of purchases consist almost wholly of items for the salaries of purchasing agents, accountants, stenographers and clerks. Smaller items appear under the headings: "Communication and Transportation," "Special and Miscellaneous Service," including "suppers" and "repairs to office devices." The same observation applies to the appropriation items of the other two bureaus and the department of law. The expenses listed in considerable detail affirmatively demonstrate that they are not "for building purposes," namely, special purposes, applying solely to the building of school houses and matters incident thereto. (*People ex rel. Toman* v. *Chicago Great Western Railroad Co.* 379 Ill. 594.) The expenses are general operating expenses of the board,— educational fund charges. Section 189⅛ of the School Law affords no basis for charging any part of them to the building fund. Our examination of the appropriations discloses that the only items qualifying as legitimate building fund expenses are appropriations under the heading "Bureau of Engineering" for two bricklayers, $13.60 per day, and one bricklayer's helper, $8.80 per day. Here, however, no specific amount is appropriated for these three employees and charged to the building fund. The objections to the appropriations for administrative expenses should have been sustained.

The board of education argues that the items assailed are "deductions from appropriations payable from the Educational Fund. The deductions are not set up as appropriations. Appropriations to offset deductions necessarily appear in other portions of the budget, but no objection has been made to corresponding appropriations made elsewhere in the budget to pay the respective amounts charged pro rata to the various funds." Upon the trial, the board

did not claim, and specifically, its witness, Bolt, did not testify that the challenged "deductions" did not enter into the computation of the tax levy and the tax rates objected to. The so-called deductions are in no real sense actual deductions. Moreover, its statement to the effect that appropriations to offset the deductions necessarily appear in other portions of the budget is not supported by any reference to either the record or the abstract. Indeed, its own explanation that the deductions are merely a method of allocating the total amount of the appropriations originally charged to the educational fund among the building and other funds to be benefited by the services for which the appropriations were made refute its assertion that the deductions did not enter into the computation of tax rates for the several funds and produce the rates assailed.

The judgment of the county court of Cook county, to the extent it overruled defendant's objections to the taxes levied by the city of Chicago, is affirmed. So far as it overruled the objections to taxes levied by the board of education, the judgment is reversed and the cause is remanded, with directions to sustain these objections.

*Affirmed in part and reversed in part and remanded, with directions.*