(No. 32824.—

The People *ex rel.* John B. Brenza, County Collector, Appellant, *vs.* Walter Jasper, Appellee.

*Opinion filed September 24, 1953—Rehearing denied Nov. 16, 1953.*

John Gutknecht, State's Attorney, Gordon B. Nash, Edward E. Plusdrak, Frank R. Schneberger, and Kirkland, Fleming, Green, Martin & Ellis, all of Chicago, (Joseph B. Fleming, Thomas M. Thomas, and Thomas F. Scully, of counsel,) for appellant.

Roy R. Barr, Robert E. Corcoran, Marshall V. Kearney, and Jack A. Williamson, all of Chicago, for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

The county treasurer, as *ex officio* county collector of Cook County, appeals from a judgment of the county court of that county sustaining objections made by Walter Jasper, a taxpayer, to certain of the taxes levied by the board of education of the city of Chicago for the year 1948.

Appellee objected to some 1110 items, totalling $1,266,-440, appropriated for in the educational fund, on the sole ground that the applicable statute makes such items chargeable to the building fund. The items complained of fall into three classes, namely, gas and electricity, school plant supplies, and educational equipment, and where they appear in the 1948 budget they are preceded by the code letters "G," "M" and "O," respectively. The budget index shows that the appropriation items reflected by these code letters are as follows:

"G—Gas—Electricity; * * * M—School Plant Supplies: Cleaning, Hand Tools; * . * * O—Educational Equipment: Typewriters, Calculating Machines, Bookkeeping Machines, Sewing Machines."

It is agreed by the parties that such items were properly chargeable to the educational fund prior to the amendment of the School Code in 1947, but appellee insists that by the terms of section 34-57 of the Code as amended, (Ill. Rev. Stat. 1947, chap. 122, par. 34-57,) such items of expense have been transferred to the building fund. The pertinent provisions of section 34-57 are as follows:

"34-57. For the purpose of establishing and supporting free schools for not fewer than nine months in each year and defraying the expenses thereof; for the purpose of building, repairing and improving schoolhouses, or procuring school land, furniture, fuel, libraries, apparatus, building and architectural supplies, for the purchase, maintenance, repair and replacement of fixtures generally used in school buildings, including but not limited to heating and ventilating systems, mechanical equipment, seats and desks,

blackboards, window shades and curtains, gymnasium and recreation apparatus and equipment, auditorium and lunch room equipment, and all expenses incident thereto in each district described in this Article, the board of education and the authorities of such district or city, as the case may be, may levy annually * * * a tax for building purposes and the purchase of school grounds * * *. Such board and authorities may levy annually, * * * for educational purposes a tax of not to exceed, * * *. Any sum expended or obligations incurred for the purpose of building schoolhouses, for procuring school land, furniture, fuel, libraries and apparatus, for the improvement, repair or benefit of school buildings and property, for building and architectural supplies, for the purchase, maintenance, repair and replacement of fixtures generally used in school buildings, including but not limited to heating and ventilating systems, mechanical equipment, seats and desks, blackboards, window shades and curtains, gymnasium and recreation apparatus and equipment, auditorium and lunch room equipment, and all expenses incident thereto, shall be paid from that portion of the tax levied for building purposes and the purchase of school grounds, but no part of the salaries or wages of persons employed in connection with the custody, heating or cleaning of school grounds and buildings shall be paid from such tax. * * * Educational purposes, building purposes and the purchase of school grounds, free text books, and school playground purposes, respectively, shall include expenses of administration incidental to each of such purposes."

The appellee contends, and the lower court held, that the appropriations for "Gas and Electricity," to which he objects, were in fact appropriations for fuel, that the appropriations for "Supplies—School Plant" were in reality appropriations for building supplies for the benefit of buildings, and that the appropriations for "Educational Equipment" were appropriations for mechanical equipment or

apparatus, all of which the statute makes chargeable to the building fund. The collector, on the other hand, insists that the 1947 amendment did not in any way affect the propriety of charging appropriations for "Gas and Electricity" to the educational fund, inasmuch as they are not used as fuel in this case; that the items appropriated for under "Supplies—School Plant" are for operation of the plants rather than for benefit to the buildings, and therefore chargeable to the educational fund; and that the appropriation for machines used for instructional purposes is clearly within the educational fund and cannot be considered to be the mechanical equipment referred to in the amended statute.

Before considering the issues raised, the arguments advanced by both parties as to the legislative intent in amending section 34-57 make it incumbent upon us to examine the law that section, in effect, succeeded. The former statute, which was section 189⅛ of the School Law, was enacted in 1941, (Ill. Rev. Stat. 1941, chap. 122, par. 212a,) and, insofar as relevant, provided as follows: "(A) For the purpose of establishing and supporting free schools for not fewer than nine months in each year and defraying all the expenses of the same of every description; for the purpose of building, repairing and improving school houses, or procuring school land, furniture, fuel, libraries and apparatus and for all other necessary incidental expenses in each district, * * * having a population of five hundred thousand or more inhabitants, * * * the board of education and the authorities of such district, * * * shall be authorized to levy annually, upon all the taxable property of the district, * * * a tax for building purposes and the purchase of school grounds * * *; and to levy annually, * * * for educational purposes a tax * * *; provided, further that any sum expended or obligations incurred for the improvement, repair or benefit of school buildings and property shall be paid from that portion of

the tax levied for building purposes and the purchase of school grounds, but after the year 1930, no part of the salaries or wages of persons employed in connection with the custody, heating or cleaning of school grounds and buildings and equipment therein shall be paid from such tax for building purposes and the purchase of school grounds."

This court was called upon to construe the prior statute in *People ex rel. Schlaeger* v. *Reilly Tar & Chemical Corp.* 389 Ill. 434, and from its terms we concluded the rule to be that building fund taxes could be levied only (1) for the purpose of building, repairing and improving schoolhouses and for purchasing school lands, and (2) for expenses or obligations incurred for the improvement, repair and benefit of school buildings and property; and that educational fund taxes could be levied (1) for the purpose of procuring furniture, fuel, libraries and apparatus, and (2) for meeting all necessary and incidental expenses of every kind, character and description, other than expenses payable from the building fund as prescribed by statute, (or from certain special funds, namely, the free textbook, playground or teachers' pension fund.) In addition, it was stated in the same case that in order to sustain an item levied for building purposes, the taxes so levied must have "a direct, and not a remote or incidental connection with a proper building purpose." This construction was adhered to in *People ex rel. Schlaeger* v. *Richè,* 396 Ill. 85, where it was held improper to charge such items as coal, gas and electricity, supplies, refinishing seats and desks, scale repairs and stage curtain repairs, to the building fund, inasmuch as their connection with a proper building purpose was not direct, but only remote and incidental.

Appellee contends that the rule of the *Reilly Tar case* is no longer applicable because section 34-57 has transferred to the building fund items of expense of the nature there and here involved. Looking to the respective statutes, both

before and after the amendment, the clause in question began: "Any sum expended or obligations incurred," and the amendment continues: "for the purpose of building schoolhouses, for procuring school land, furniture, fuel, libraries and apparatus, for the improvement, repair or benefit of school buildings and property, for building and architectural supplies, for the purchase, maintenance, repair and replacement of fixtures generally used in school buildings, including but not limited to heating and ventilating systems, mechanical equipment, seats and desks, blackboards, window shades and curtains, gymnasium and recreation apparatus and equipment, auditorium and lunch room equipment, and all expenses incident thereto * * * shall be paid from such tax." Prior to the enactment of section 34-57, section 189⅛ provided only that the building fund could levy for "building purposes and the purchase of school grounds" and for "the improvement, repair or benefit of school buildings and property."

A reading of section 34-57 makes it apparent that the items challenged by appellee, namely, gas and electricity, school plant supplies and educational equipment were not, in terms, transferred to the building fund. However, appellee first advances the broad argument that such items are now payable from the building fund as expenses incident to the building purposes set forth in section 34-57. In support of this contention it is urged that since the legislature enacted section 34-57 some six months after the decision in the *Richè case,* it is to be presumed that it took notice of the construction that items of such nature were "incidental" to building purposes, but payable from the educational fund, and intended that they be charged to the building fund as expenses "incident" to the building purposes stated in the section. We do not impute such a sweeping effect to the amendment nor do we find that the language employed by the legislature is susceptible to the construction that *all* expenses incidental to building pur-

poses must be paid out of the building fund. The phrase "expenses incident thereto" very logically and grammatically refers to the expenses incident to the purposes listed in the same paragraph, and those purposes are: building schoolhouses, procuring school land, building and architectural supplies, fuel, libraries and apparatus, and the purchase, maintenance and repair of fixtures generally used in school buildings, etc. Expenses incident to *building, procuring, purchasing, maintaining, repairing* and *replacing* cannot be said to extend to those expenses of operation which have always been an educational fund charge and which (with the exception of "fuel" procurement) were not mentioned in the amendment. Construing the grant of power to levy taxes strictly, as we must, we find no basis to hold that every expense which might have some incidental relation to a building purpose has now been made a charge on the building fund.

In this respect, it is to be noted that the exact limitation of the *Richè case* was that a building fund item must have "a direct, and not a remote or incidental connection with a proper building purpose," and it was held that appropriations for "gas and electricity" and for "school plant supplies" did not have the direct connection required to sustain them as proper building fund levies. Nothing in the amended statute requires a different construction or evidences a contrary legislative intent. Appellee arrives at his conclusion by substituting the word "incidental" as used in the *Richè case* for the phrase "incident thereto" which is the wording of the statute. As appellant points out, and as the *Richè case* recognizes, an incidental expense may be one that is remote and unessential to the building purposes for which the power to tax is granted but an expense incident to the power to build, to procure, to repair and replace is a *sine qua non* to the accomplishment of the purposes authorized. It is the latter expenses to which the statute expressly and clearly relates and not to every incidental

expense, no matter how remote or indirect from the purposes set forth. We conclude that the rule of the *Reilly Tar* and *Richè cases,* that a building fund item must have a direct and not a remote or incidental connection with a proper building purpose, still obtains.

We come now to a consideration of appellee's contention that each of the three items of which he complains comes under one or more of the classes of expense expressly transferred to the building fund by section 34-57. Looking first to the items of "gas and electricity" appellee argues that they are in fact appropriations for "fuel" as that term is used in the amended statute. The facts relating to this item show that following the decision in the *Richè case,* the board of education appropriated both for "fuel" and "gas and electricity" always as separate items in its educational fund. However, in 1948, because of the enactment of section 34-57 of the School Code, the board appropriated for "fuel" in its building fund but continued to appropriate for "gas and electricity" in its educational fund. The "fuel" appropriated for was wood, coal and oil which were the combustibles employed in the heating systems of the individual school buildings. None of the buildings were heated either by gas or electricity, rather the electricity appropriated for was used for illumination and the operation of electric motors connected to ventilating systems, fans, business machines, educational aids, and the like. The gas appropriated for was only for use in technical and science classes in the operation of Bunsen burners, forges and other instructional apparatus.

As previously stated, it is appellee's contention that the appropriations for "gas and electricity" so used is an appropriation for "fuel" within the meaning of section 34-57 and therefore properly chargeable to the building fund. In arriving at his result, appellee argues that when the legislature used the term "fuel" in the amendment, it intended thereby to embrace any element that could produce heat,

light and power for schools. Appellant, on the other hand, insists that the General Assembly is presumed to have used the word "fuel" in its ordinary and accepted meaning and to have intended that the term should embrace only combustible materials used to produce building heat. To support his position, appellee has cited cases from other jurisdictions where, under the factual and statutory situations presented, both gas and electricity have been held to be fuel. (*Crown Central Petroleum Corp.* v. *Frick-Reid Supply Co.* 173 Ark. 983, 293 S.W. 1012; *Westinghouse Co.* v. *B & M Traction & Power Co.* 98 Vt. 130, 126 Atl. 594.) We do not, however, find those decisions either conclusive or persuasive in arriving at what was intended by our legislature.

Where a dispute arises concerning the intent of the legislature in enacting or amending a statute, we have held that the surrounding circumstances, the facts existing at the time, and the problem sought to be remedied, are all proper considerations in construing the terms by which such legislation was accomplished. (*People ex rel. Nelson* v. *Olympic Hotel Bldg. Corp.* 405 Ill. 440; *U.S. Industrial Alcohol Co.* v. *Nudelman,* 375 Ill. 342.) As a further guide in arriving at the legislative intent, we have stated that the legislature is presumed to have made an investigation and to have determined the facts before enacting the legislation. *Giebelhausen* v. *Daley,* 407 Ill. 25.

There are numerous and persuasive conditions contemporaneous with the amendment of section 34-57 to supplant section 189⅛ of the School Law, which demonstrate the legislature's awareness of the problem to be remedied and of the circumstances under which the problem arose. In *People ex rel. Schlaeger* v. *Reilly Tar & Chemical Corp.* 389 Ill. 434, where first arose the question of what appropriations for the building fund were permissible under section 189⅛, it was held that appropriations for refinishing seats and desks, window shade repairs, lunchroom equipment, new curtains, new seats and desks and physical edu-

cation equipment were not proper charges àgainst the building fund. This opinion, which involved taxes levied by the Chicago board of education for the years 1941 and 1942, was filed January 17, 1945, and rehearing was denied March 19, 1945. The legislature then attempted to offset the result of the *Reilly case* by enacting a validating act (Laws of 1945, p. 1631,) which became a law on July 17, 1945, and purported to validate building fund appropriations of the nature this court had held illegal. In *People ex rel. Schlaeger* v. *Richè,* 396 Ill. 85, when the board's 1943 tax levy came before us, we found that the validating act did not cure the defects in the items held objectionable in the *Reilly case,* and held that similar items appropriated for in 1943 had been improperly charged to the building fund. In addition new items were considered and it was held that appropriations for "gas and electricity, fuel, school plant supplies, new blackboards, scale repairs, and certain administrative expense," were properly chargeable to the educational fund and not the building fund. Within six months after this decision, which was filed January 22, 1947, the legislature next attempted to alleviate the problem facing the board of education by amending section 34-57 which was the counterpart of section 189⅛ in the comprehensive School Code that was adopted in 1945.

The amendment, which was approved July 21, 1947, (Laws of 1947, pp. 1622-4,) enlarged building purposes in the terms shown by italics in the following quotation: "Any sum expended or obligations incurred for the purpose of building schoolhouses, for procuring school land, *furniture, fuel, libraries and apparatus,* for the improvement, repair or benefit of school buildings and property, *for building and architectural supplies, for the purchase, maintenance, repair and replacement of fixtures. generally used in school buildings, including but not limited to heating and ventilating systems, mechanical equipment, seats and desks, blackboards, window shades and curtains, gymnasium and recrea-*

*tion apparatus and equipment, auditorium and lunch room equipment, and all expenses incident thereto,* shall be paid from that portion of the tax levied for building purposes and the purchase of school grounds. * * * *Educational purposes, building purposes and the purchase of school grounds, free text book and school playground purposes, respectively, shall include expenses of administration incidental to each of such purposes.*"

From the amendatory language it is to be seen that the invalid *Reilly* and *Richè case* appropriations for refinishing seats and desks, window shade repairs, new blackboards, new· seats and desks, new cots, lunchroom equipment, new curtains and physical education equipment to the extent that those items constituted "fixtures" were specifically allocated to the building fund. Items in the *Richè case* such as auto repairs, postage, carfare, telegrams and travel which were held to be improper building fund charges were, by the terms of the amendment, transferred to the building fund when such expenses of administration were incident to the enumerated building purposes.

It should be repeated that the *Richè case* also held appropriations for coal, fuel, gas and electricity, and school plant supplies were improper charges against the building fund. Of these items, the only one expressly transferred to the building fund by the amendment was "fuel." Inasmuch as the terms employed in amending section 34-57 make it apparent that the legislature was aware of the statutory limitations on the building fund levy announced by this court, and since that body was confronted with a situation where "gas and electricity" and "fuel" had always been appropriated for as separate items, it must be said that when "fuel" was transferred to the building fund, the legislature attached the same meaning to the word as was reflected by the budgets under consideration in the *Reilly* and *Richè cases,* namely that of wood, oil or coal used for combustion in school furnaces. It would produce an un-

reasonable result to suppose that the legislature, confronted by appropriations for gas and electricity and for coal, both held improperly charged to the building fund, would expressly transfer appropriations for fuel to that fund under the impression that they were thereby also transferring appropriations for gas and electricity. Considering all the facts and circumstances, we are also of the opinion that the terms of the amendment make it manifest that the clear legislative intent was to transfer to the building fund the items expressly referred to in the amendment and to leave in the educational fund items not expressly transferred. Accordingly, we find appellee's contention, that the legislature intended by its use of the word "fuel" to transfer any element which might produce heat, light or power, to be without merit or support.

Based upon the rule that when the invalid part of a levy cannot be separated from the valid part the whole levy is void, (*People ex rel. Thies* v. *Baltimore and Ohio Southwestern Railroad Co.* 356 Ill. 272,) appellee advances the alternative contention that the appropriations for gas and electricity are void because the evidence shows that some undetermined amount of the electricity is used to operate fans, blowers, motors and pumps which are adjuncts of the heating and ventilating systems in school buildings. He reasons that since the heating systems are used to burn "fuel," the procurement of which was expressly transferred to the building fund, the expense of operating the electrically-powered adjuncts of the heating and ventilating systems becomes either a part of the cost for heating, or an expense "incident" to a building purpose. From what has been said before, it follows that electricity so used was not within the contemplation of the legislature when it used the term "fuel" in the amendment and that the cost of operating the equipment which the amendment authorizes the board to purchase, maintain, repair and replace, is not an expense incident to any of those purposes. Neither can

it be said to be an expense incident to the authority given to procure fuel or apparatus with funds from the building tax. As pointed out in the *Reilly case,* operating expenses have always been an educational fund charge, that fund being the general corporate and operating fund. Nothing in the language employed by the legislature in the amendment has transferred, or shown an intent to transfer, such operating expenses to the purposes set out in the statute. We must therefore hold that the expense of operating the motors in question was properly charged in its entirety to the educational fund.

For the reasons stated, we conclude that the county court erred when it sustained appellee's objection to each of the appropriations for gas and electricity.

The second class of items which appellee contends, and the county court held, should have been appropriated for in the building fund rather than the educational fund, are those for "Supplies—School Plant." The budget index shows that the appropriations are intended to cover such items as soap, cleaning compound, and small cleaning and hand tools used by janitors in cleaning school buildings. Here again is an item which was held to be an improper charge against the building fund in the *Richè case* and to which the legislature did not expressly refer when it amended section 34-57. Appellee concedes that the disputed item was found to be too remotely connected with a building purpose under the former statute but argues that since cleaning is vital to the preservation of a school building, and thus of benefit to it, the expense of cleaning equipment used must be construed as one of the expenses incident to the building purposes set forth in the amended statute. In making this argument appellee reverts to the premise, heretofore discussed and found lacking, that the phrase "expenses incident thereto" embraces *all* expenses incident to building purposes no matter how remote or unessential. We do not find that the 1947 amendment added any purpose

to which the expense of such expendable supplies can be said to be an incident. In view of the legislature's failure to expressly treat upon this item and in view of the construction we have given to the phrase "expenses incident thereto," we conclude that the cost of such items remains an operating expense which still must be appropriated for in the educational fund. It was, therefore, error for the county court to sustain the objection to this class of items.

The budget index discloses that the designation "Educational Equipment," which is the subject of the third objection to the educational fund levy, is meant to include the cost of typewriters, calculating machines, bookkeeping machines and sewing machines used for the purpose of instruction. The question presented with respect to these items is again whether they were transferred from the educational fund to the building fund by the amendment to section 34-57. Appellee takes the position that the legislature intended that cost of all capital outlays for furniture, libraries, apparatus and equipment should be paid from the building fund. He says that such an intent is manifested first, by the transfer of "school * * * furniture, * * * libraries and apparatus" from the educational fund to the building fund, and, second, by the transfer to the building fund of expenses "for the purchase, maintenance, repair and replacement of fixtures generally used in school buildings, including but not limited to heating and ventilating systems, mechanical equipment, seats and desks, blackboards, window shades and curtains, gymnasium and recreation apparatus and equipment, auditorium and lunch room equipment." It is contended that machines of the nature here involved are "apparatus" and "mechanical equipment generally used in school buildings" according to the legislative definition and, as such, must be paid for from the building fund tax.

Appellant adopts the point of view that none of the educational equipment appropriated for under this item are

"fixtures generally used in school buildings" as the term "fixture" is understood at law, and contends that the machines involved are in the same category as maps, books, movie projectors, test tubes or carpenter tools used for the purpose of instruction and which are chargeable to the educational fund. In meeting this argument, appellee maintains that there is no justification for the claim that the "fixtures" referred to in the amendment are the same as trade fixtures in real property law and contends that the legislature's action in transferring furniture, a movable item, to the building fund, shows that it was not the legislative intent to charge the building fund only with such fixtures that are made a part of the freehold.

Since furniture was dealt with separately by the legislature in amending the statute, it is not to be presumed that it was done without reason or that the legislature had "furniture" in mind when it dealt with equipment in other clauses of the amendment. All of the equipment referred to in the amendment as being chargeable to the building fund is descriptive of the more general provision preceding it, *viz.:* "fixtures generally used in school buildings." Webster defines the noun "fixture" as being a "Thing firmly fastened in place; * * * That which is fixed or attached to something as a permanent appendage." (Webster's New International Dictionary, Second Ed.) Looking to the equipment to which the word "fixture" refers in the amendment, we find it to be "including but not limited to heating and ventilating systems, mechanical equipment, seats and desks, blackboards, window shades and curtains, gymnasium and recreation apparatus and equipment, auditorium and lunch room equipment." The specified items are all of the type which are attached to school buildings as permanent appendages and would not be moved or removed, except for replacement, when once put in place in a school building. On the other hand, typewriters, adding, bookkeeping and sewing machines are all devices which are known and

intended to be movable and are oftentimes placed upon wheeled stands to facilitate their movement. We cannot say, therefore, that the legislature contemplated such machines when it referred to "mechanical equipment" generally used as a fixture in a school building.

In the absence of an express legislative direction to the contrary, still another reason obtains which requires a construction that the educational equipment involved is still chargeable to the educational fund. To say that a typewriter should be charged to the building fund is to distort the entire concept of the building fund as a special fund for the exclusive use and purpose of building, repairing and improving schoolhouses, purchasing school lands and defraying the cost of improvement, repair and benefit of school property. The purchase of machines to be used for instruction cannot conceivably result in any of these purposes, and to hold that the cost of such machines has been transferred to the building fund, in the absence of a clear legislative direction, would be to breach the traditional barriers between building purposes and educational purposes to the confusion of all concerned. We are of the opinion that the county court likewise erred in sustaining this objection.

In our consideration of all the objections raised by appellee, we have kept in mind that prior to the 1947 amendment, this court had construed the words "for building purposes" as being special and limited to the specific purpose defined by statute, whereas the phrase "for educational purposes" was construed to be general and applicable to all matters for which a board of education might levy school taxes. (*People ex rel. Schlaeger* v. *Reilly Tar & Chemical Corp.* 389 Ill. 434.) In the cited case, and again in the *Richè case,* it was held that a direct, and not a remote or incidental, connection with a proper building purpose was required to justify a charge on the building fund. There is nothing in section 34-57, as amended in 1947,

that alters these general principles as announced by this court. All the amendment does is to transfer specific items from the educational fund to the building fund. All items not so transferred remain subject to the rules and limitations which existed prior to the amendment and, as demonstrated, this is particularly true of those items of operating expense which the appellee would now construe as expenses for building purposes. In the absence of language showing a legislative intent to transfer expenses which have traditionally been charged to the educational or general fund of the school board to a special fund—the building fund— we must hold that such expenses continue to be chargeable to the educational fund and are properly appropriated and levied for under that fund.

For the reasons stated, the judgment of the county court of Cook County sustaining appellee's objections is reversed and the cause is remanded with directions to overrule the objections.

*Reversed and remanded, with directions.*