(No. 31038

THE PEOPLE *ex rel.* Louis E. Nelson, County Collector, Appellee, *vs.* OLYMPIC HOTEL BUILDING CORPORATION, Appellant.

*Opinion filed March 22, 1950.*

ADELBERT BROWN, of Chicago, for appellant.

JOHN S. BOYLE, State's Attorney, (GORDON B. NASH, MELVIN' F. WINGERSKY, and JOSEPH H. O'CONNOR, of counsel,) all of Chicago, for appellee; FRANK R. SCHNEBERGER, and KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, both of Chicago, (JOSEPH B. FLEMING, and THOMAS M. THOMAS, of counsel,) for *amicus curiae* on rehearing.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

Appellant, Olympic Hotel Building Corporation, filed objections to the Cook County collector's application for judgment and order of sale of real estate, delinquent for nonpayment of taxes for the year 1945. The county court overruled four separate and distinct objections and, from the judgment entered, an appeal has been taken directly to this court, the question of revenue being involved. The objections pertained to the corporate fund, bond and interest fund, highway fund and county employees annuity and benefit fund, as levied by the county of Cook for the year 1945, taxes being paid in full under protest.

It is stipulated that the county collector duly made a *prima facie* case; that the objector is the owner of the

parcel of real estate described in the objections, which real estate is located within the boundaries of Cook County. The issues on appeal are restricted to the objections filed to each of the four separate levies.

The objection to the corporate fund levy goes to the amount in excess of the "pegged" limit of $8,500,000 set by act of the legislature through House Bill 618. (Laws of 1943, p. 558; Ill. Rev. Stat. 1943, chap. 34, par. 25.) Section 25 of that act, having to do with the powers of the county board, provides in part às follows:

"Thè County Boards of the several counties shall have power: * * *

"Fifth. To cause to. be levied and collected annually taxes for county purposes, including all purposes for which money may be raised by the county by taxation * * * in counties having 500,000 or more inhabitants * * * for the year 1945 at the rate of twenty-five (25) cents or at a rate which when extended will produce an amount not to exceed $8,500,000 whichever may be the greater, * * *."

Prior to 1943 it had been the practice of the assessor of Cook County, over a long period of time, to debase the value of property to 37 per cent for assessment purposes. In November, 1943, he departed from the customary practice and assessed all property for taxation purposes on the basis of fair cash value or at 100 per cent of its value.

The objector contends that the act aforesaid prescribes one of two alternatives: (1) a rate limit of $ .25 which must be read in the light of what it would produce under assessment practices that prevailed at the time the law was adopted, July 1943, or (2) a pegged levy of $8,500,000, whichever may be the greater.

The relator, on the other hand, takes the position that a rate may be used which when extended will produce an amount not to exceed the sum of $8,500,000, or that the rate of 25 cents may be used regardless of the assessed value or the amount it will produce, whichever method

produces the greater amount. Under relator's position he may disregard the pegged amount and levy a much larger one at his option.

In determining the meaning of a grant of power to levy taxes, strict construction will be given to that which is relied upon to confer the power. *People ex rel. McDonough* v. *Mills Novelty Co.* 357 Ill. 285; *People ex rel. Toman* v. *Chicago Heights Terminal Transfer Railroad Co.* 375 Ill. 590; *People ex rel. Dooley* v. *New York, Chicago and St. Louis Railroad Co.* 371 Ill. 522.

A number of general rules of statutory construction are cited by both sides, which we have considered, but it will not be necessary to enumerate them here. A statute itself affords the best means of its exposition, and if the legislative intent can be ascertained from its provisions, that intent will prevail without resorting to other aids for construction. *Burke* v. *Industrial Com.* 368 Ill. 554; *Coon* v. *Doss,* 361 Ill. 515.

It is true there is no need of construction to ascertain the meaning of a statute where the language is clear and unambiguous and the intention of law-making power is manifestly apparent therefrom. (*Bergeson* v. *Mullinix,* 399 Ill. 470; *People* v. *Lund,* 382 Ill. 213.) However, it is a well-settled rule of statutory construction that, in construing statutes, the intention of the legislature will control and that the several provisions of the statute should be construed together in the light of the general purpose and object of the act, so as to give effect to the main intent and purpose of the legislature as therein expressed. (*People ex rel. Hutchcraft* v. *Louisville and Nashville Railroad Co.* 396 Ill. 502; *People ex rel. Curren* v. *Schommer,* 392 Ill. 17; *People ex rel. Rice* v. *Wilson Oil Co.* 364 Ill. 406; *People ex rel. Harding* v. *Goldberg,* 332 Ill. 346; *State Public Utilities Com.* v. *Monarch Refrigerating Co.* 267 Ill. 528; *People* v. *Price,* 257 Ill. 587.) The history of the legislation, considered with the objects to be accom-

plished and reading the entire section together, indicates its purpose. *People ex rel. Hutchcraft* v. *Louisville and Nashville Railroad Co.* 396 Ill. 502; *Morris* v. *The Broadview, Inc.* 385 Ill. 228.

Resort to explanatory legislative history has been declared not to be forbidden no matter how clear the words may first appear on superficial examination. (*Harrison* v. *Northern Trust Co.* 317 U.S. 476, 63 S. Ct. 361.) Historical facts and the significant circumstances leading up to the enactment of a statute may be noticed to show that a literal interpretation of the words used is not the intended meaning. (*Church of the Holy Trinity* v. *United States,* 143 U.S. 457, 12 S. Ct. 511.) The elusiveness of legislative intent is not less than that of proximate cause and reasonable doubt, and the decisions of the many cases pertaining thereto present a maze of distinctions, contradictions and theories under different circumstances and situations which end in a morass of unintelligible precedents in their application.

Differentiating the principles as we find them from the record here, and taking into consideration the legislative history of the fifth paragraph of the act, as above pointed out, in connection with pertinent provisions of the statute relative to powers of the county board, it is our opinion that the rate limit of $.25 must be read in the light of what it would produce under assessment practices that prevailed at the time the law was adopted in July, 1943. The act must be read as limiting the amount of taxes that could be levied and collected for county purposes by Cook County for the year 1945 to whichever was the greater of either (1) the $.25 rate applied to an assessment debased to 37 per cent of full value, in accordance with the practice prevailing in July, 1943, when the act was amended, or (2) a rate applied to an assessment debased to 37 per cent of full value, which, when extended, would produce an amount not to exceed $8,500,000. Under the facts before us, the $.25

rate so applied would produce approximately $5,537,300, and the pegged levy would produce $8,500,000. The levy actually extended having exceeded the greater of those two amounts, it follows that the lower court was wrong in overruling the objections to the corporate fund levy. There would be merit to relator's contention if the legislature had amended the fifth paragraph of the above-quoted act after the change in assessment practice raising the assessment from 37 per cent to 100 per cent of full fair cash value, but that is not the case here. As pointed out, the trial court erred in overruling the objection to the corporate fund levy.

The second objection goes to the 1945 tax for the retirement of principal and interest of certain nonreferendum funding bonds issued by Cook County November 3, 1944, pursuant to a resolution of the commissioners. By that resolution the county also audited and allowed claims against it in the amount of $2,468,965.05 which the bonds were to discharge.

The appropriation and levy of said county for the fiscal year 1945 included $49,360 for interest and $309,000 for principal retirement of said bonds. It is argued this tax is invalid because the authority under which the bonds were issued (Ill. Rev. Stat. 1943, chap. 34, par. 103-W) was restricted to claims that were audited and allowed prior to December 1, 1942, whereas the funding bonds were issued for the payment of claims audited and allowed November 3, 1944, the same date that the bonds were authorized. The pertinent parts of the act in question are as follows:

"In all cases where any county having a population of 500,000 or more inhabitants has incurred indebtedness prior to December 1, 1942 for proper county purposes, such indebtedness being evidenced by claims that shall have been audited and allowed by the county board, or evidenced by judgments rendered prior to December 1, 1942 against

such county, such county may issue negotiable coupon bonds in the amount of such unpaid claims or judgments, or both, for the purpose of paying same, and may levy taxes upon all the taxable property in such county sufficient to pay the principal of such bonds at maturity and to pay the interest thereon, as it falls due, within the constitutional limitation of 75 cents per $100 of valuation, without submitting the question of issuing such bonds and levying such taxes to a vote of the people of such county. * * * and such bonds shall be authorized by resolution adopted by the county board prescribing all details of issue and determining the amount of unpaid indebtedness incurred for proper county purposes whether evidenced by judgments or claims, or both, which finding shall be conclusive as to the amount and validity thereof. * * * such bonds may be delivered by the county board to the owners of such indebtedness evidenced by claims, or to the holders of such judgments, on the basis of par for par, in full payment therefor, and in either case the claims representing such indebtedness shall be paid simultaneously upon the delivery of the bonds and the judgments shall be satisfied * * *. Such payments may be made without any prior appropriation therefor under any budget law."

Section 3 (par. 103-Y) of the same act says:

"The holder of any such bonds shall not be obligated to inquire into the validity of the claims or judgments funded thereby but shall be entitled to rely upon the proceedings taken pursuant to the provisions of this act with respect thereto as establishing the validity of such claims or judgments so funded, and the power to issue such bonds."

The objection is on the further grounds that the legislature is without power to authorize the conversion of the claims for payment because no appropriation to cover them was in effect and such action imposes a debt upon the county for which it was not legally liable. This, it is argued, violates sections 9 and 10 of article IX of the Illinois con-

stitution, as well as the due-process clauses of the State and Federal constitutions.

There is no contention that the claims were not proper ones to be allowed. It is conceded that they were incurred by reason of appropriations that were valid and could have been paid while those appropriations were in effect, but it is said there was no appropriation in effect on November 3, 1944, when the claims were audited and allowed.

The objector construes the statute as requiring the auditing and allowing of the claims prior to December 1, 1942, while the relator takes the position that a proper construction of the statute requires only that the indebtedness shall have been incurred prior to said date and that the claims may be audited and allowed at any time prior to the time the bonds are sold or exchanged.

To construe the act as contended for by objector, we would be required to hold that it was the intention of the legislature to say in substance: "such indebtedness being evidenced by claims that shall have been audited and allowed prior to December 1, 1942." We cannot gather that intention from the act and it is the legislative intention that must control. (*People ex rel. Herlihy Mid-Continent Co.* v. *Nudelman*, 370 Ill. 237; *People ex rel. Barrett* v. *West Side Trust and Savings Bank*, 362 Ill. 607.) This court will not read into a statute words which are not found therein either by express inclusion or a fair implication. *Landry v. Shinner & Co.* 344 Ill. 579; *First Nat. Bank* v. *Hahnemann Institutions*, 356 Ill. 366.

In our opinion, the act required only that the indebtedness be incurred by claims audited and allowed by the county board prior to the time the bonds were authorized. It being conceded that the claims were incurred under proper appropriation, and in view of the provision of the act that the payment of bonds may be made without any prior appropriation therefor under any budget law, we cannot hold that the bonds created an indebtedness unauthorized

by law. The court committed no error in overruling the objection to this levy.

The third objection is to a portion of the levy for administrative expenses under the county highway fund. It is claimed by objector that the county highway levy, authorized in addition to the corporate fund levy, is restricted to the requirements for State-aid roads. (Article IV of the Roads and Bridges Act,—Ill. Rev. Stat. 1943, chap. 121, pars. 9-38.) State-aid roads are those constructed, repaired or improved at the joint expense of the State and the county. (Ill. Rev. Stat. 1943, chap. 121, par. 1(b).) Objector argues that it cannot be ascertained what part or parts of the appropriation in question were made for expenditures on State-aid roads and what part or parts were made for corporate fund expenses for highways. The items complained of are grouped under the following classification:

1. General Administration ............$ 160,296.00
2. Highway Department—County Zoning
    Bureau .........................    36,235.92
3. Primary Roads ...................   426,949.00
4. Secondary Roads .................   889,443.00
5. Warehouse and Testing ...........   141,779.50

$1,654,703.42

Under each classification were specific items covering salaries of various regular employees, including chief engineer, accountants, clerks, stenographers, typists, public relations director, and the like; items were also listed covering materials and parts, the aggregate appropriation for all of which being $1,654,703.42, the amount objected to. The question for determination is, were these amounts appropriated and levied for expenditures on State-aid roads or were they, or a portion of them, appropriated and levied for corporate fund expenses for highways?

At the hearing it was stipulated that relator had made a *prima facie* case. Neither side offered any evidence in explanation of the appropriation and levy made. The appropriation and levy amounts are the same and are divided into two main sections, the first being for personal services and the second for materials and parts.

It is argued by the objector that the burden was upon the relator to prove that the items in question were properly levied under the statute covering expenditures for State-aid roads, whereas the relator takes the position that the burden was on the objector to show that the items in question were not levied for that purpose but for some other purpose not authorized by law. Where the levy is in proper form the presumption is in favor of the validity of the tax, and the mere possibility that the fund, when collected, might be diverted to some other purpose, does not invalidate the levy. (*People ex rel. Schlaeger* v. *Richè*, 396 Ill. 85, 90; *People ex rel. Quisenberry* v. *Bates,* 266 Ill. 55.) In such case the burden is on the objector to prove the illegality of the levy. *People* v. *Richè,* 396 Ill. 85; *People ex rel. Gleghorn* v. *Elgin, Joliet and Eastern Railway Co.* 255 Ill. 269.

The objector places much stress upon the cases of *People ex rel. Schlaeger* v. *Reilly Tar & Chemical Corp.* 389 Ill. 434, and *People. ex rel. Schlaeger* v. *Richè,* 396 Ill. 85, in which it was held that certain items levied for building purposes really constituted levies for educational purposes. It was evident on the face of the levies in those cases that certain items were included under the building fund levy which could only be proper for educational purposes.

It is argued that when invalid portions of the levy cannot be separated from the remainder, the whole is void and that the record discloses numerous items which patently are not highway fund items. Among those specifically challenged are "Salaries and Wages of Regular Employees" in reference to "Secondary Roads," "Highway Depart-

ment County Zoning Bureau," "Street Signs and Signals—$8,000," "Interest on 1945 Tax Anticipation Warrants, $20,000" and "Tax Deficiencies $290,000." We have been furnished no authority to the effect that secondary roads are not included within those of State-aid classification, so that salaries and wages of regular employees in reference to secondary roads is not shown to be illegal.

The attack on the "Highway Department County Zoning Bureau" is unsound since the County Zoning Act (Ill. Rev. Stat. 1943, chap. 34, par. 152i *et seq.*) gives the county power to regulate and restrict the location and use of buildings and structures adjacent to highways and to establish buildings or set back lines outside the limits of cities, villages and incorporated towns. There is no showing that this levy is not for those purposes in connection with State-aid roads.

A levy for "Street Signs and Signals" is a proper one in furtherance of the marking of highways. Likewise are the levies for tax anticipation warrants and tax deficiencies proper, and there is no showing that any one of the aforementioned items are not made in connection with State-aid roads. The same is true of all other items complained of.

The total amount of the levy objected to is not so large, when we consider the size of Cook County and the network of roads traversing it, many of which are State-aid roads, as to indicate upon its face that the tax is for other than State-aid roads. The court did not err in overruling this objection.

Finally, objection is made to the tax for "Employees Annuity and Benefit Fund." It is first contended that the act under which the levy was made is unconstitutional. That point was not urged in the brief and argument and must be considered as waived. *People ex rel. Buchanan* v. *Mulberry Grove Community High School Dist.* 390 Ill. 341.

This objection challenges the levy for the claimed reason that it exceeds the statutory limit of $300,000. The objector says that the act prescribes detailed regulations in reference to the management and administration of the fund and then provides that the "county shall contribute the sum of $300,000 each year to the annuity and benefit fund herein provided for." Laws of 1925, p. 266; Ill. Rev. Stat., 1943, chap. 34, par. 240, sec. 53.

A study of this section does not disclose that the sum of $300,000 is a ceiling over what might be levied under the act. We find these words in that section: *"provided, however,* if in any one year such sum of three hundred thousand dollars ($300,000.00) together with all other sums required during such year for the purposes of the annuity and benefit fund herein provided for, in accordance with the provisions of this Act, shall constitute an amount in excess of the total amount received into said annuity and benefit fund during such year, all sums required for purposes other than those stated in this section shall be applied for such purposes and the balance of the said total amount received shall be applied for the purposes named in this section." The legislature by the use of the quoted words clearly indicated that other sums besides the $300,000 would be required during the year for the purposes of the annuity and benefit fund. As a further indication of the legislative intent they use these words at the end of the section: "However, the county shall not in any event contribute any amount in excess of three hundred thousand dollars ($300,000.00) in any one year for any and all purposes stated in this section." It will be seen therefore, that the sum of $300,000 is intended to cover only the items specified in the section, the legislature having in mind that there would be other sums required during the year for the purposes of the annuity and benefit fund.

Section 11 (par. 198) of the act is the one which authorizes the levy and it reads in part as follows:

"It shall be lawful for the county board of any such county to levy a tax of not more than thirty-five two-hundredths (35/200) of a mill on the dollar of the assessed valuation of all taxable property in such county for the purpose of providing revenue for the annuity and benefit fund herein provided for.

"For such purpose, beginning in the year in which this Act shall come in force and effect in such county, the county board of such county shall levy a tax annually upon all taxable property in such county at the rate on the dollar of all such taxable property that will produce a sum which, when added to the amounts deducted from the salaries of the employees included under the provisions of this Act and applied to the annuity and benefit fund herein provided for, will be sufficient for the purposes of said fund in accordance with the provisions of this Act."

No limitation is set as to the amount which may be levied "for the purposes of said fund." The act provides for a total fund and the provisions of section 53 (par. 240) upon which the objector relies is only a portion of the act and provides a limitation only upon the items mentioned in that paragraph. A careful reading of the whole act impels the conclusion that the levy here objected to was a proper one and that the court committed no error in overruling the objection thereto.

In our opinion, the county court erred in overruling the objection to the corporate fund levy, but was right in overruling objections to the other three levies. We therefore reverse the lower court's judgment concerning the corporate fund levy and remand the cause with directions to sustain the objection thereto. In all other respects the judgment is affirmed.

*Affirmed in part and reversed in part*
*and remanded, with directions.*